Filed 4/2/21  Galluzzi v. Deutsche Bank National Trust Co. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| ANTHONY GALLUZZI,<br><br>   Plaintiff and Appellant,<br><br>   v.<br><br>DEUTSCHE BANK NATIONAL<br>TRUST COMPANY,<br>as Trustee, etc. et al.,<br><br>   Defendants and Respondents. | D076750<br><br><br>(Super. Ct. No.<br> 37-2018-00031326-CU-FR-CTL) |
| --- | --- |


APPEAL from a judgment of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Affirmed.

Kennedy & Souza and John W. Millar; Law Offices of William P. Aldrich and William P. Aldrich, for Plaintiff and Appellant.

Houser & Allison and Robert W. Norman, Jr., Timothy A. Schneider for Defendants and Respondents.

Anthony Galluzzi appeals a judgment of dismissal entered after the court sustained without leave to amend the demurrer of respondents Deutsche Bank National Trust Company (the bank), Ocwen Loan Servicing, LLC (Ocwen), Western Progressive, LLC, a debt collection agency, and First

Line Mortgage, Inc. to Galluzzi's operative second amended complaint. Galluzzi alleged causes of action for declaratory relief, fraud and conspiracy to defraud, and wrongful foreclosure based on his home loan that was originated in 2006 and modified for the third time in 2016.

Galluzzi does not challenge the court's ruling on the wrongful foreclosure cause of action; rather, he contends the rest of the ruling was erroneous, as he "sufficiently and clearly [met] the necessary pleading thresholds" to support the causes of actions. He also claims the court improperly denied him leave to amend his complaint. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

We state the facts, even if improbable, from the properly pleaded allegations of Galluzzi's second amended complaint. (*Century-National Ins. Co. v. Garcia* (2011) 51 Cal.4th 564, 566, fn. 1; *Hacker v. Homeward Residential, Inc.* (2018) 26 Cal.App.5th 270, 280.) However, we disregard contentions, deductions or conclusions of fact or law. (*Marsh v. Anesthesia Services Medical Group, Inc.* (2011) 200 Cal.App.4th 480, 491.)

Galluzzi alleged: "The mortgage loan recorded on or about February 6, 2006, . . .was fraudulently based, and that [he] was induced to enter into said mortgage loan on the basis of such intentional misrepresentations of fact made by [d]efendants . . . regarding [his] ability to make the monthly payments on said mortgage loan easily; which in fact was not true, and therefore the mortgage contract . . . should be rescinded." This allegation regarding the 2006 original loan was incorporated by reference into all causes of action in the second amended complaint.

Galluzzi obtained loan modifications in 2009 and 2011 through IMPAC Companies, Master Servicer (IMPAC), an entity that he concedes is not a named defendant in the operative complaint: "IMPAC Mortgage Corp.

2

. . . was added as a Doe Defendant No. 1 prior to the hearing on [r]espondents' demurrer, and it had not yet appeared in the lower court action before [the] hearing on this demurrer." Galluzzi claims IMPAC did not have an opportunity to answer the complaint before the demurrer hearing.

We summarize Galluzzi's allegations regarding the third loan modification because as to all causes of action, Galluzzi argues the crux of his complaint is respondents' "wrongful conduct commencing in late 2015 related to [his] last loan modification that was eventually entered into in early April 2016." In September 2015, Galluzzi spoke with Nolan Martinez, whose position at IMPAC is unidentified. Martinez said that "in order for IMPAC to do the loan modification, [Galluzzi's] account would need to be in good standing, otherwise [Galluzzi] would have to deal with Ocwen." (Some capitalization omitted.) Galluzzi returned the approval letter to IMPAC for processing. Galluzzi subsequently received new loan modification documents from Ocwen, which contained less favorable terms than those he had discussed with Martinez. Galluzzi telephoned Martinez over an approximately two-week span but got no response. On some unidentified date, Galluzzi telephoned "Brian Kim, AVP [associate vice president] IMPAC." The next day, Martinez telephoned Galluzzi and said he would "take this to the board and correct the loan modification's terms." A few days later, Martinez advised Galluzzi not to return the Ocwen loan documents, and offered new loan modification terms. Martinez also said Galluzzi should do nothing and that new loan modification documents would be sent to Galluzzi in a couple of weeks. When the documents did not arrive, Galluzzi telephoned Martinez, who promised to investigate the matter. Approximately one week later, Martinez telephoned Galluzzi and said that Galluzzi had missed another loan payment, his account was past due and

3

Martinez could not help him anymore; instead, Galluzzi should deal directly with Ocwen. Galluzzi alleged, "This lack of communication between [ ] IMPAC and Ocwen is what caused [his] loan to become delinquent." (Some capitalization omitted.)

At some unspecified later date, Galluzzi paid the past amount due on the loan and Martinez and Kim assured Galluzzi that this time the loan modification process would be handled properly. However, more time passed without Galluzzi obtaining any help despite his further telephone calls to Martinez and Kim. Galluzzi telephoned Ocwen's "Relationship Manager" named Rudolph at some unspecified date. Rudolph said the February 1, 2016 deadline for Galluzzi to submit the loan modification documents had passed. Galluzzi thereafter telephoned an unidentified Ocwen "client services person in India," who said Galluzzi could still submit the loan documents at that time. At some unidentified date, Galluzzi telephoned the head of Ocwen's loan modification department, William Fant, who promised to help. Fant telephoned Kim at IMPAC, and they agreed to a new loan proposal that was still unsatisfactory to Galluzzi. After Galluzzi did not receive the new loan modification documents, Fant and Kim told him Ocwen "was working with an antiquated system and it could not do this type of step-up loan." Kim told Galluzzi that Ocwen would likely decline the loan modification application if there was any delay in its submission. Galluzzi considered unfavorable the offered terms of 2.5 percent interest for three years, with a step-up directly to 7.625 percent interest rate thereafter. Nevertheless, Galluzzi returned the loan modification documents to Ocwen and the loan modification was approved.

On May 25, 2018, a notice of default was recorded showing Galluzzi owed $39,543.53 on his mortgage.

4

In June 2018, Galluzzi filed his initial complaint. In his second amended complaint filed in February 2019, Galluzzi alleged that he was induced into entering into the mortgage loan transaction in 2006, and that respondents did not hold an interest in the deed of trust. He sought a "judicial determination of his rights and duties, and a declaration as to whether the existing mortgage loan contract is valid or invalid."

As to the fraud cause of action, Galluzzi alleged that defendants "were engaged in an illegal scheme the purpose of which was to market, and place loans secured by real property in order to make commissions, kick-backs, illegal undisclosed yield spread premiums, and undisclosed profits by the sale of any instruments arising out of the transaction. Plaintiff alleges that defendants, and each of them, have represented to plaintiff and to third parties that they were the owner of the trust deed and note as either the trustee or the beneficiary regarding plaintiff's real property. Based on this representation plaintiff has paid to defendants, and each of them, substantial sums of money on a monthly basis." (Some capitalization omitted.)

As to the conspiracy cause of action, Galluzzi alleged that defendants "conspired together and entered into a fraudulent sales scheme, including participating and directing an inflated appraisal process, the purpose of which was to make loans to plaintiff, which defendants . . . were keenly aware that plaintiff could not afford, at a cost far exceeding the then prevailing market rate, made loans to plaintiff and falsely represented to plaintiff that he could not qualify for any other financing, and that such scheme was devised to extract illegal and undisclosed compensation from plaintiff by virtue of an undisclosed yield spread premium and which defendants . . . shared in some presently unknown

5

percentage."

Galluzzi alleged he suffered emotional distress because of respondents' conduct, and sought damages in excess of $500,000.

Respondents demurred to the complaint, contending that Galluzzi failed to state any cause of action as a matter of law, and each cause of action was barred by the respective statute of limitations because the loan was originated in 2006 and Galluzzi filed the complaint in 2018. Respondents also argued the complaint did not make allegations about respondents' conduct but rather focused on IMPAC's conduct; the complaint was uncertain and ambiguous, and it was contradicted by the deed of trust, loan modification documents, and substitution of trustee documents that respondents requested the court judicially notice. Respondents additionally argued: (1) Western Progressive was not involved with the loan, or any of its modifications. Further, Galluzzi had made no allegations against Western Progressive, whose actions were protected by the trustee's privilege under Code of Civil Procedure section 2924; (2) Galluzzi's declaratory relief claim would be determined by the underlying claims, and he had reaffirmed the validity of the loan through three separate modifications; (3) Galluzzi's fraud claim was not pleaded with specificity and he did not properly allege reliance or damages; (4) the conspiracy claim was deficient as Galluzzi made no claim that respondents acted in concert with IMPAC; moreover, respondents were not involved with the loan origination in 2006. Respondents contended: "[I]t was not until December 2012 that defendants became involved with plaintiff or the subject property. Defendant [the bank], as trustee[,] is the beneficiary under the [deed of trust], defendant [Ocwen] is merely the loan servicer, and defendant [Western Progressive] is merely the trustee under the [deed of trust]. Defendants could in no way have been involved in the vague

6

representations plaintiff is now accusing them of." (Some capitalization omitted.)

Galluzzi opposed the demurrer, arguing he sought a declaration of rights as to the 2016 third loan modification and not the original 2006 loan. He also claimed he alleged sufficient direct and circumstantial evidence to support the fraud and conspiracy causes of action; Western Progressive's actions in this case were not privileged under Code of Civil Procedure section 2924; and the causes of action were not time-barred because respondents' primary tortious actions occurred in 2015 and 2016, and continued until the "wrongful" recording of the notice of default.

Respondents in reply argued that the declaratory relief claim was uncertain, barred by the statute of frauds, and subject to resolution in the underlying action. They also reiterated that Galluzzi failed to plead the fraud cause of action with specificity, and did not properly allege reliance or damages. Respondents also contended as to the conspiracy cause of action: "[Galluzzi] has not pleaded any information on how defendants formed a conspiracy, what the purpose of the conspiracy was, each action defendants took in furtherance of the conspiracy, or the damages sustained. [Galluzzi] cannot rely on conclusory allegations to maintain this claim. [He] has not facts or evidence [*sic*] to show that each of the defendants acted in concert. The only connection between defendants is that they each played a role with the subject deed of trust. This business relationship is insufficient to establish a conspiracy." (Some capitalization omitted.)

At the hearing on the motion, Galluzzi's counsel conceded that the complaint "was not well[-]pleaded. And, in fact, I see where your Honor is coming from about the statute of limitations argument, based on a 2006 set of loan documents." Counsel added, "The statute of limitations for dec[laratory]

7

relief of the underlying cause of action, 3 years, 4 years on breach of contract. If you consider the loan modification of April 2016, there really isn't a statute of limitations problem in this complaint filed in 2018. So to the extent the dec[laratory] relief action was dismissed on statute of limitations [grounds], I'd ask that your Honor reconsider that. The second aspect of the dec[laratory] relief ruling was that it was uncertain. I'll be honest and I'll give you that. It was uncertain because it does really focus on the 2006 loan documents. I would request the opportunity to amend to make more clear, as I think we did in the opposition, to amend that cause of action to focus . . . primarily on that last loan modification."

Regarding the fraud cause of action, Galluzzi's counsel stated it was pleaded with specificity, but allowed, "certainly at worst, your Honor, yes, it could be cleaned up, it could be shortened up a little bit, peppered by paragraph numbers even." Galluzzi's counsel added that "on the conspiracy, especially with IMPAC in the case, it can definitely be more specifically pled."

The trial court in sustaining the demurrer without leave to amend granted respondents' request for judicial notice, and ruled: (1) no facts showed that Western Progressive acted in bad faith; therefore, the trustee's privilege under Civil Code section 2924, subdivision (d) applied; (2) Galluzzi's claims regarding the 2006 loan origination were barred by the statute of limitations; (3) as Galluzzi could not allege facts showing that he did not rely on the validity of the 2006 note in accepting the loan modifications, the declaratory relief cause of action failed as it was uncertain; (4) Galluzzi failed to allege facts showing that the other respondents were liable for any of IMPAC's wrongdoing; and (5) the wrongful foreclosure claim failed because there had not been a foreclosure sale.

8

DISCUSSION

In determining whether an appellant "properly stated a claim for relief, our standard of review is clear: ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) This court will affirm an order sustaining a demurrer on any proper grounds, regardless of the basis for the trial court's decision. (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1468.)

## I. *Statute of Limitations*

Galluzzi contends his claims were not barred by the statutes of limitations because "the primary tortious action by [d]efendants occurred in late 2015 and into 2016, and continued until the wrongful recording of the [notice of default]."

An action upon a liability created by statute, other than a penalty or forfeiture must be commenced within three years. (Code Civ. Proc., § 338, subd. (a).) The statute of limitations for fraud is three years. (Code Civ. Proc., § 338, subd. (d).) The statute of limitations for declaratory relief on a

9

fraud claim is three years. (*See Snyder v. California Ins. Guarantee Assn.* (2014) 229 Cal.App.4th 1196.) Galluzzi in the complaint sought relief related to the 2006 loan origination and not, as he contends on appeal, related to the third loan modification; therefore, the court did not err in sustaining the demurrer on the ground the claims alleged in the 2018 lawsuit are time-barred.

*Western Progressive's Privilege as Trustee*

Galluzzi contends the trustee privilege under Code of Civil Procedure section 2924, subdivision (d) did not apply here because "questions of fact exist as to [Western Progressive's] 'good faith' reliance on the documentation presumably provided to it by the other [r]espondents, as well as its understanding as to whether the other [r]espondents acted in good faith in initiating the foreclosure in the first place."

Under Code of Civil Procedure section 2924, subdivision (d), the actions of a trustee are privileged. The court did not err in sustaining the demurrer as to Western Progressive because the operative complaint's allegations and judicially noticed documents show it acted solely as trustee of the deed of trust beginning in May 2018. Further, Galluzzi made no allegation regarding Western Progressive's involvement in the 2006 loan origination.

*Fraud Cause of Action*

Galluzzi contends he "sufficiently alleg[ed] a prima facie fraud cause of action against [r]espondents showing that from the beginning of the loan transaction (in 2015 when IMPAC contacted [Galluzzi] about modifying his loan), [he] was presented (actually misrepresented with) at least two loan modifications, he had accepted both of these timely and before they were retracted, and both IMPAC and [Ocwen] later fraudulently reneged on those agreements. In the end, after several excruciating months, [he] was

10

presented a take it or leave it modification (or face foreclosure proceedings) with an outrageous 7.65 [percent] interest rate in 3 years."

" 'The elements of fraud . . . are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' " (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)  Fraud must be pleaded specifically with facts showing how, when, where, to whom, and by what means representations are tendered; general and conclusory allegations do not suffice.  (*Tenet Healthsystem Desert, Inc. v. Blue Cross of California* (2016) 245 Cal.App.4th 821, 837-838.)  And, when a corporate defendant is involved as here, appellants  " 'must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." ' " (*Id*. at p. 838.)

Galluzzi failed to allege when he made some of the phone calls to some of the individuals involved in the purported wrongdoing and whether he participated in the telephone call between Fant and Kim.  Galluzzi has also failed to establish that the individuals he spoke with, including Rudolph, made statements that were misrepresentations, knowing at the time they were false, and intended to induce Galluzzi's reliance.  "In short, [the] allegations entirely fail to specify . . . how any such statements caused [appellant] harm.  . . .  '[T]he essential element of causation is lacking unless the plaintiff sets forth facts to show that his or her actual reliance on the representations was justifiable, so that the cause of the damage was the defendant's wrong and not the plaintiff's fault.' " (*Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1614.)  We conclude the

11

court did not err by sustaining the demurrer as to this cause of action because the complaint lacked the required specificity.

*Civil Conspiracy Claim*

Galluzzi contends the court erred in sustaining the demurrer as to his conspiracy cause of action because he sufficiently pleaded direct and circumstantial facts or evidence to support this cause of action.

Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. (*Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 784.) By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. (*Ibid.*) In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors.

Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort. " 'A civil conspiracy, however atrocious, does not per se give rise to a cause of action unless a civil wrong has been committed resulting in damage.' " (*Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39, 44.) " '*A bare agreement among two or more persons to harm a third person cannot injure the latter unless and until acts are actually performed pursuant to the agreement. Therefore, it is the acts done and not the conspiracy to do them which should be regarded as the essence of the civil action.*' [Citation.] [¶] We have summarized the elements and significance of a civil conspiracy: ' "The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design . . . . In such an action the major significance of the conspiracy lies in

the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity.' " ' " (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510-511.)

Galluzzi did not allege in the second amended complaint how IMPAC and respondents may be regarded as joint tortfeasors. Galluzzi relies on the fact that in his complaint he alleged on information and belief "that, at all times herein mentioned each of the defendants sued herein was the agent and/or employee of each of the remaining defendants, and at all times, was acting within the purpose and scope of such agency and/or employment." (Some capitalization omitted.) However, in a related context, a court has pointed out that this kind of allegation—that " 'each [d]efendant was the agent and employee of every other [co-d]efendant,' [is] the kind of 'secondary-liability allegation[ ]' our Supreme Court has derided as an 'egregious examples of generic boilerplate[.]' " (*Simmons v. Ware* (2013) 213 Cal.App.4th 1035, 1049.) Galluzzi has not shown that IMPAC and respondents had an agency relationship, and it appears each respondent is a separate business entity. Accordingly, we conclude the court did not err by sustaining the demurrer as to this cause of action.

*Declaratory Relief*

Galluzzi contends: "[T]he import of this cause of action has nothing to do with 'validity' of the 2006 note, but rather is premised on (a) determining the validity of the April 2016 loan modification, i.e.[,] is it enforceable or should it be rescinded or reformed based on [r]espondents' predatory loan practices prior to that modification being entered (or, for example, it should be reformed to reflect the terms offered in the loan modification offered to

13

[him] in December 2015, which he accepted, but which Respondents later reneged on) and/or (b) what are the rights and obligations of the parties under the April 2016 loan modification if it is found to be valid and enforceable." (Some emphasis omitted.)

To state a claim for declaratory relief, the plaintiff must allege facts showing there is a dispute between the parties concerning their legal rights, constituting an "actual controversy" within the meaning of the declaratory relief statute. (Code Civ. Proc., § 1060; *Artus v. Gramercy Towers Condominium Assn.* (2018) 19 Cal.App.5th 923, 930.) A claim for declaratory relief fails when it is " ' "wholly derivative" of other failed claims.' " (*Smyth v. Berman* (2019) 31 Cal.App.5th 183, 191-192 quoting *Ball v. FleetBoston Financial Corp.* (2008) 164 Cal.App.4th 794, 800.) Galluzzi's claim for declaratory relief fails as it is dependent on and derivative of his insufficiently pleaded fraud cause of action. Moreover, as stated, Galluzzi in the complaint specifically sought declaratory relief related to the original 2006 loan, therefore the court did not err in concluding this claim as pleaded is time-barred.

*Denial of Leave to Amend*

The trial court sustained respondents' demurrer without leave to amend. A plaintiff may demonstrate for the first time to the reviewing court how a complaint can be amended to cure the defects. (Code Civ. Proc., § 472c, subd. (a) ["[w]hen any court makes an order sustaining a demurrer without leave to amend the question as to whether or not such court abused its discretion in making such an order is open on appeal"]; see *Rubenstein v. The Gap, Inc.* (2017) 14 Cal.App.5th 870, 881 [" 'While such a showing can be made for the first time to the reviewing court [citation], it must be made' "];

14

*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711.)

Galluzzi has not met his burden of making that showing. Rather, in general terms he states he would "more clearly and unequivocally alleg[e] (a) the actual, ostensible and/or implied agency relationships that existed amongst all of the respondents (and newly added IMPAC defendant), (b) more clearly describ[e] the communications/discussions/writings amongst appellant and the Ocwen and IMPAC defendants representatives in late 2015 and through April 1, 2016[,] (including but not limited to adding more particularly to the discussions/misrepresentations made to appellant by Messrs. Kim, Martinez Rudolph and Fant, the agents of the IMPAC and Ocwen that were integrally involved in this loan modification transaction . . . and (c) more clearly plead the declaratory relief cause of action to cure the 'uncertainties' found by the lower court, including more clearly focusing the cause of action on the April 2016 loan modification transaction/documents." (Some capitalization omitted.)

Although, as pointed out, Galluzzi acknowledges what he needs to do to amend his complaint, he has failed to show this court what additional claims or allegations he would make to overcome the defects the trial court identified with his second amended complaint. In other words, Galluzzi "must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading. [Citation.] Here [he] has never advanced, either in the trial court or before us, any effective allegation which he could now make if further amendment to the complaint were to be permitted. Although he insinuates multiple wrongs by respondents, he never points out in what manner those insinuations could be

15

combined to state a cause of action." (*Cooper v. Leslie Salt Co.* (1969) 70 Cal. 2d 627, 636-637.)

## DISPOSITION

The judgment is affirmed. Respondents are entitled to costs on appeal.

O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


DATO, J.